UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELENA BORUM,

Plaintiff, Case No.: 8:26-cv-03215

v.

TAILORED SHARED SERVICES, LLC, d/b/a
The Men's Wearhouse, LLC,

Defendant.
_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Elena Borum ("Plaintiff" or "Ms. Borum"), sues Defendant, Tailored Shared Services, LLC, d/b/a The Men's Wearhouse, LLC ("Defendant" or "Men's Wearhouse"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes ("FCRA"), for sexual harassment and retaliation, and under Florida common law for negligent retention and battery.

2. This Court has jurisdiction over the Title VII claims under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3). The Court has supplemental jurisdiction over the FCRA and common-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

3. Plaintiff, Elena Borum, is a female who resides in Hillsborough County, Florida. From April 2022 until May 11, 2025, Defendant employed Plaintiff at The Men's Wearhouse Store No. 3312, 25690 Sierra Center Boulevard, Lutz, Florida 33559 ("Store 3312"), which is located in Pasco County, Florida. Plaintiff was an "employee" of Defendant as defined by Title VII and the FCRA.

4. Defendant, Tailored Shared Services, LLC, d/b/a The Men's Wearhouse ("Defendant" or "Men's Wearhouse"), is a Texas limited liability company that is authorized to do business, and does business, in Florida, including in Pasco County, where it operates retail menswear stores, including Store 3312.

5. At all times material, Defendant was an "employer" as defined by Title VII and the FCRA. Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and employed more than 500 employees.

6. Venue is proper in the Middle District of Florida, Tampa Division, under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices and torts alleged below occurred at Store 3312 in Pasco County, Florida, and Defendant is subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### A. Plaintiff's Employment with Defendant

7. Defendant hired Plaintiff on May 4, 2021, as a part-time consultant at its store in Richmond, Virginia. By the end of summer 2021, Plaintiff was a full-time consultant.

8. Plaintiff was promoted to Store Lead in or about January 2022, transferred to Store 3312 in April 2022, and was promoted to Assistant Manager of Store 3312 in January 2023.

9. Plaintiff performed her job well. During her employment, Defendant never issued Plaintiff a write-up, a performance warning, or performance coaching.

10. In December 2023, the management of Store 3312 consisted of Nathaniel "Nate" Dixon, Store Manager, and Plaintiff, Assistant Manager. In or about February 2024, Andres Bonelli joined Store 3312 as Assistant Store Manager. Mr. Dixon reported to Gina Lawson, Regional Manager.

11. Defendant's Employee Relations and Human Resources personnel included Michelle Cogburn, Employee Relations Manager, and Simone Taylor, Human Resources Business Partner.

12. At all times material, Mr. Dixon, Mr. Bonelli, Ms. Lawson, Ms. Cogburn, and Ms. Taylor acted within the course and scope of their employment with, and as agents of, Defendant. Mr. Dixon and Ms. Lawson had authority to take, approve, or recommend demotions and other tangible employment actions affecting Plaintiff, and Mr. Bonelli had authority to direct Plaintiff's work and to take or recommend such actions.

13. Store 3312 did not post contact information for Defendant's Human Resources department. Employees at Store 3312 were expected to raise complaints through the Store Manager and the Regional Manager.

14. Javaris Richards was a full-time consultant at Store 3312. He had worked at Store 3312 for approximately one month before December 2023. In December 2023, Mr. Richards was Plaintiff's subordinate.

15. Upon information and belief, before December 2023, Defendant knew that Mr. Richards had made sexually inappropriate comments about other female employees and had been the subject of complaints or discipline related to his treatment of women at another Men's Wearhouse store, which had caused Defendant to transfer him to Store 3312.

**B. December 10, 2023: Richards Strikes Plaintiff and Sexually Harasses Her**

16. On December 10, 2023, between approximately 1:00 p.m. and 2:00 p.m., Plaintiff was working on the sales floor of Store 3312 with a customer, showing him how different shirts looked with a coat laid out on a table.

17. Mr. Richards walked up behind Plaintiff, bounced the end of a clothes hanger off her buttocks, and said, "you're looking kind of thick today."

18. Other employees were close by. A female Store Lead ("A.M.") was at the front register, in line of sight, and saw Mr. Richards pass behind Plaintiff and saw Plaintiff's reaction.

19. Minutes later, Mr. Richards stood a few feet away and commented aloud, within Plaintiff's hearing and in the presence of other employees and the customer, about whether Plaintiff looked "thick" or whether it was just the way her dress fit.

20. Mr. Richards's touching of Plaintiff was unwelcome, offensive, and without her consent. It humiliated Plaintiff in front of a customer and her coworkers.

21. At approximately 5:55 p.m. that day, Plaintiff told Mr. Richards that he had crossed a major line, that she did not appreciate his touching her, and that he must never do it again.

22. The same day, Plaintiff telephoned Mr. Dixon, who was off duty, for guidance. Mr. Dixon described what had happened as a "gray area" and said that gray areas like this sometimes happen. He told Plaintiff about a male employee known as "Ed" who had repeatedly touched a female coworker and even grasped a necklace from between a her breasts without her consent. Mr. Dixon said that Ed had not been punished but then advised Plaintiff to write an email to him so that there would be a record in case the conduct escalated, rather than report the event to Human Resources.

23. On December 11, 2023, Plaintiff emailed Mr. Dixon and documented what Mr. Richards had done and said.

24. On or about December 11–12, 2023, Plaintiff learned from coworkers that Mr. Richards had been telling male coworkers, including a coworker who was then still in high school ("G.L."), that he planned to have sex with Plaintiff and A.M. Among other things, Mr. Richards said "what I'd do to bend her over and f*** her with that back tattoo". Mr. Richards also made sexual comments about another female member of Store 3312's management team.

## C. Defendant's Response: A Written Warning and No Separation

25. On or about December 12, 2023, Plaintiff, with Mr. Dixon's help, reported Mr. Richards's conduct to Defendant's Human Resources department. Mr. Dixon escalated the complaint to Ms. Lawson and forwarded Plaintiff's email to Ms. Taylor at Ms. Lawson's request.

26. Ms. Taylor and Ms. Cogburn investigated Plaintiff's allegations. In a telephone interview in December, 2023, Plaintiff described the incident and told Defendant that she felt unsafe working alongside Mr. Richards, that his comments were inappropriate in the presence of a high-school-aged employee, that she was concerned he would repeat his conduct, and that she wanted him transferred out of Store 3312 at a minimum. A.M. was also interviewed by H.R. and made the same request.

27. Defendant's investigation confirmed what Plaintiff reported. By letter dated January 3, 2024, Defendant's Employee Relations department told Plaintiff that it had concluded its investigation, that it had interviewed Mr. Richards and others, and that appropriate action had been taken. The letter recounted that Mr. Richards had bounced the end of a hanger off Plaintiff's rear and said, "you're looking kind of thick today." Upon information and belief, Mr. Richards admitted the conduct during the investigation.

28. After concluding the investigation, the only action Defendant took was to issue Mr. Richards a written warning. Defendant did not transfer him, move him to a different shift, separate his schedule from Plaintiff's, or otherwise keep him away

from Plaintiff. Mr. Richards remained at Store 3312, and he and Plaintiff continued to work together during and after the investigation.

29. Defendant's January 3, 2024 letter invited Plaintiff to contact Ms. Taylor if any additional incidents occurred and promised that Defendant would investigate in a prompt and thorough manner.

30. Mr. Dixon excused Mr. Richards's conduct to Plaintiff by attributing it to PTSD, and he later said that he would not write up Mr. Richards because Mr. Richards has a child.

31. Defendant had a history of tolerating sexual misconduct by male employees at Men's Wearhouse stores. Mr. Dixon told Plaintiff that "Ed" had harassed women and that Defendant had moved him from store to store. Upon information and belief, Defendant did not terminate Ed until after he had engaged in misconduct toward women for at least five years, including touching a female employee's buttocks. Ms. Lawson handled his termination.

**D. Defendant Demotes Plaintiff Twice and Cuts Her Hours**

32. In or about February 2024, approximately two months after Plaintiff reported Mr. Richards, Mr. Dixon pulled Plaintiff and two other employees aside. He told Plaintiff that she was being demoted from Assistant Manager to Store Lead. He presented the demotion as already decided and as a favor to Plaintiff, so that she could take a three-week study-abroad program in June 2024, because a Store Lead is easier to cover than an Assistant Manager.

33. However, Plaintiff had asked for and received approval for that three-week absence from Mr. Dixon and Ms. Lawson before she enrolled in the program, which was before Mr. Richards harassed her. Neither had suggested then that Plaintiff would have to be demoted to take time off for the trip.

34. Ms. Lawson approved the demotion. Plaintiff did not request the demotion, and she had no performance problems that warranted such a demotion.

35. In or about May 2024, Mr. Bonelli asked Plaintiff out. Plaintiff declined. After she rejected him, Mr. Bonelli removed Plaintiff from store-organization projects she had been working on, asked her whether she wanted to step down, and tried to obtain her store keys through A.M.

36. On or about May 21, 2024, Plaintiff texted Mr. Dixon, Mr. Bonelli and Ms. Lawson that she did not wish to step down. Plaintiff then left the country on or about May 21–22, 2024, for the approved three-week study-abroad program.

37. On May 26, 2024, days after Plaintiff's text and while she was out of the country, Defendant, with Ms. Lawson's approval, demoted Plaintiff again, from full-time Store Lead to a part-time Consultant, reduced her pay to $19.00 per hour, and substantially reduced her hours. Defendant also eliminated Plaintiff's accrued vacation time, which meant she would not receive paid time off for the duration of her three week program. No one told Plaintiff about the demotion at the time. Upon information and belief, Mr. Bonelli led or recommended the demotion. Tyler Moss, a Store 3312 employee who was hostile to Plaintiff, took over her former position.

38. Plaintiff learned of the second demotion in or about mid-June 2024, when she saw her schedule and a new role handbook in her Human Resources forms. Mr. Dixon never discussed the demotion with her while she worked for Defendant. Upon information and belief, management hoped the demotion would convince Plaintiff to quit when she returned.

39. Defendant has since asserted that Plaintiff asked for both demotions. That is false. Plaintiff never asked to be demoted, she told management in writing that she was not stepping down, and she never called Ms. Lawson to ask for a demotion or for her full-time role back.

40. Beginning in or about June 2024, Mr. Moss implemented a sales-tracking program at Store 3312 that tied employees' schedules and hours to their individual sales. Employees, including Plaintiff, signed a form stating that their schedules would be affected by sales. Plaintiff met her sales goals, but her hours continued to fall.

**E. Plaintiff Complains Again, and Defendant Disciplines Others but Not Richards**

41. In or about July 2024, Plaintiff complained to Mr. Dixon and Mr. Bonelli about derogatory comments Mr. Moss made about her perceived ethnic and religious background and about customers. On July 20 and 21, 2024, Plaintiff told Mr. Bonelli that the comments were hurtful, that they needed to stop, and that she had complained multiple times without any change. Mr. Bonelli relayed her complaint to Mr. Moss, who mocked Plaintiff. Plaintiff overheard Mr. Moss and Mr. Bonelli spend roughly thirty minutes complaining about employees who complain.

42. On or about August 7, 2024, Mr. Bonelli asked Plaintiff and A.M. what employees were telling Human Resources about Mr. Moss.

43. On July 29, 2024, Plaintiff reported to Defendant's Human Resources department by telephone that (a) Mr. Moss was making derogatory comments about her perceived ethnic and religious background and about customers; (b) Mr. Bonelli knew of the comments and did nothing; (c) Mr. Richards was still making sexual comments to and about her; and (d) Defendant had demoted her without notice causing her to lose accrued vacation time. The Human Resources representative expressed shock and said Defendant would recover Plaintiff's vacation pay. To Plaintiff's knowledge, Defendant did not do so, and Defendant did not investigate Plaintiff's reports about Mr. Richards or her demotion.

44. On or about August 9, 2024, Ms. Cogburn concluded that the complaints about Mr. Moss were substantiated. On August 13, 2024, Defendant terminated Mr. Moss and issued Mr. Bonelli a written warning for witnessing Mr. Moss's discriminatory comments and failing to act. Defendant took no action regarding Mr. Richards, Plaintiff's demotions, or her lost vacation time.

45. After August 13, 2024, Defendant's management considered Mr. Richards for the Store Lead position from which Plaintiff had been demoted.

**F. Richards's Harassment Escalates While Management Does Nothing**

46. Mr. Richards continued to work alongside Plaintiff and continued to harass her. Beginning at least in August 2024, he repeatedly told Plaintiff that she was "weird" and that this meant she was "a freak in bed." Over about a week and a half in

the fall of 2024, he told her that "weird girls" are "freaks in bed" and that this was why men are crazy for her. He talked to her about other women's bodies. When he walked past Plaintiff, he frequently dragged his body against hers, rubbing his groin against her backside.

47. In early September 2024, Mr. Richards stood in a doorway at the back of Store 3312 and blocked Plaintiff's path. He held three flat fingers, pointed at her, about an inch from her stomach for an uncomfortably long period of time, said "no," and then walked around her. Plaintiff was frightened and froze while he did this.

48. In late September 2024, Plaintiff reported Mr. Richards's conduct to Mr. Bonelli. Nothing happened.

49. On October 3, 2024, Mr. Richards touched Plaintiff's stomach and told her she had a "fupa." Twice that day, he told her she looked two months pregnant. Earlier that month, he had also leaned his body against hers.

50. On October 5, 2024, Plaintiff told Mr. Dixon and Mr. Bonelli what Mr. Richards had been doing. Mr. Dixon offered to tell Ms. Lawson. Plaintiff told him she had already raised it with Human Resources and wanted to try Human Resources again. Mr. Dixon said he would speak to Ms. Lawson the following Monday, and he again excused Mr. Richards's behavior by attributing it to PTSD. To Plaintiff's knowledge, her report never reached Human Resources, and Defendant took no action.

51. In late October 2024, Mr. Richards dragged a pant hanger across Plaintiff's buttocks as he walked behind her.

52. Each time Plaintiff complained to Mr. Bonelli, he told her he had spoken or would speak to Mr. Dixon. Plaintiff later learned that this was not true.

53. On December 7, 2024, Mr. Richards, Mr. Bonelli, and other male employees held a conversation at Store 3312 about having sex with Plaintiff and A.M. Mr. Richards said that he would have sex with both of them, and the men discussed how many shots of alcohol it would take to do so. Rather than stop the conversation, G.L., by then a Store Lead, told A.M. to clock out and leave. Mr. Bonelli, an assistant store manager, allowed the conversation to continue and participated in it. Plaintiff learned of the conversation on December 8, 2024, when A.M. told her.

54. Mr. Bonelli did not report the December 7, 2024 conversation to Mr. Dixon until on or about January 4, 2025, when he used the conversation to terminate Mr. Richards because he was upset at him for another reason. On January 5, 2025, Plaintiff again told Mr. Bonelli about Mr. Richards's ongoing harassment. Mr. Bonelli did not report the harassment to Human Resources.

55. Defendant's Human Resources department investigated the December 7, 2024 conversation between Mr. Richards, Mr. Dixon and A.M., but did not interview Plaintiff, even though A.M. asked Human Resources to speak with Plaintiff because Plaintiff had information about both Mr. Richards's history of touching her, and about management's failure to address this issue.

56. Defendant did not end Mr. Richards's employment until approximately January 2025, more than thirteen months after Plaintiff first reported him. Defendant then immediately moved another employee into a full-time position. Defendant did

not consider Plaintiff, who had been an Assistant Manager—a step above Store Lead—before being demoted.

57. On or about March 30, 2025, Mr. Dixon told Plaintiff that Defendant could not permit her to be absent for her internship, even though Defendant had previously accommodated other employees' absences for school.

**G. Plaintiff Is Forced to Resign**

58. Defendant's demotions and reductions in Plaintiff's hours cut her pay and left her unable to pay for basic necessities, including food and toiletries.

59. By May 2025, Plaintiff's working conditions had become so intolerable that a reasonable person in her position would have felt compelled to resign. Plaintiff had been demoted twice after complaining of harassment. She had been made to work alongside Mr. Richards for more than a year after reporting him. During that time, he touched her and subjected her to repeated sexual comments. Management dismissed her complaints, excused her harasser, failed to protect her, and cut her hours and pay.

60. Plaintiff remained employed while her EEOC charge was pending. In May 2025, Plaintiff contacted the EEOC investigator assigned to her charge to explain that she could not continue working under these conditions and was resigning from the Men's Wearhouse. Plaintiff resigned in May, 2025.

61. As a result of Defendant's conduct, Plaintiff has suffered lost wages and benefits, emotional pain and suffering, mental anguish, humiliation, inconvenience, and loss of enjoyment of life.

**H. Administrative Prerequisites and Conditions Precedent**

62. On August 19, 2024, Plaintiff filed a Charge of Discrimination, No. 511-2024-03303, with the Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Florida Commission on Human Relations ("FCHR") under the work-sharing agreement between the agencies. The charge alleged discrimination based on sex, national origin, and religion, and retaliation, and identified Defendant as "The Mens Wearhouse" at Store 3312. Defendant had actual notice of the charge and, through counsel, submitted a position statement to the EEOC.

63. After filing the charge, Plaintiff supplemented it through the EEOC's online portal with information about continuing and later events, including Mr. Richards's conduct after July 29, 2024, the December 7, 2024 conversation, the events of January 2025, and the circumstances forcing her resignation in May 2025. The claims in this Complaint are like or related to, and grew out of, the allegations in the charge and the investigation that could reasonably be expected to follow from it.

64. On July 29, 2026, the EEOC issued a Determination and Notice of Rights notifying Plaintiff of her right to sue. Plaintiff received it on July 29, 2026. Plaintiff filed this action within ninety days of her receipt of the notice.

65. More than 180 days have passed since Plaintiff filed her charge and the FCHR has not issued a determination. This action under the FCRA is timely.

66. Plaintiff signed an arbitration agreement with Defendant, but because this case relates to a sexual harassment dispute, no pre-dispute arbitration agreement

is enforceable against Plaintiff, and Plaintiff elects to proceed in this Court. 9 U.S.C. §§ 401–402.

67. All conditions precedent to this action have been performed, have occurred, or have been waived or excused.

**COUNT I – SEXUAL HARASSMENT – TITLE VII**

68. Plaintiff realleges and incorporates paragraphs 1 through 67 above.

69. This is an action against Defendant for sexual harassment under Title VII, 42 U.S.C. § 2000e-2(a)(1).

70. Plaintiff is female and a member of a protected class. During her employment, Plaintiff was subjected to unwelcome sexual harassment because of her sex, including the touching, sexual comments, and conduct described above by Mr. Richards and Mr. Bonelli.

71. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a hostile and abusive work environment. Plaintiff subjectively perceived the environment as hostile and abusive, and a reasonable person in her position would have as well.

72. Defendant is liable for the hostile work environment because it knew of the harassment, through Mr. Dixon, Ms. Lawson, Ms. Taylor, and Ms. Cogburn, no later than December 10–12, 2023, and again through Plaintiff's repeated later reports, and it failed to take prompt and effective remedial action. Defendant kept Mr. Richards at Store 3312, working alongside Plaintiff, for more than a year, and the harassment continued and escalated.

73. Defendant is also liable for the harassment by Mr. Bonelli, who was Plaintiff's supervisor. After Plaintiff rejected Mr. Bonelli's advances, Defendant took tangible employment actions against her, including the May 26, 2024 demotion, which Mr. Bonelli led.

74. Additionally, Plaintiff promptly and repeatedly used Defendant's complaint channels, and Defendant's response was unreasonable and ineffective.

75. The harassment culminated in Plaintiff's constructive discharge, a tangible employment action.

76. As a result of Defendant's unlawful employment practices, Plaintiff has been deprived of equal employment opportunity and has suffered lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

77. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a(b)(1).

WHEREFORE, Plaintiff, Elena Borum, demands judgment against Defendant for:

a) back pay and lost benefits;

b) front pay or reinstatement;

c) compensatory damages;

d) punitive damages;

e) pre- and post-judgment interest;

f) reasonable attorneys' fees and costs under 42 U.S.C. § 2000e-5(k); and

g) such other relief as the Court deems appropriate.

**<u>COUNT II – SEXUAL HARASSMENT – FCRA</u>**

78. Plaintiff realleges and incorporates paragraphs 1 through 67 above.

79. This is an action against Defendant for sexual harassment under the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, including section 760.10(1)(a). Defendant was an "employer" of Plaintiff as defined by the FCRA.

80. Plaintiff is female and a member of a protected class. During her employment, Plaintiff was subjected to unwelcome sexual harassment because of her sex, including the touching, sexual comments, and conduct described above by Mr. Richards and Mr. Bonelli.

81. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a hostile and abusive work environment.

82. Defendant is liable for the hostile work environment because it knew of the harassment no later than December 10–12, 2023, and again through Plaintiff's repeated later reports, and it failed to take prompt and effective remedial action. Defendant is also liable for the harassment by Mr. Bonelli, a supervisor, because tangible employment actions, including the May 26, 2024 demotion, followed Plaintiff's rejection of his advances.

83. Additionally, Plaintiff made Defendant aware of the harassment and Defendant failed to take appropriate action to end the harassment.

84. The harassment culminated in Plaintiff's constructive discharge.

85. As a result of Defendant's unlawful employment practices, Plaintiff has been deprived of equal employment opportunity and has suffered lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

86. Defendant's conduct was willful, malicious, or in reckless disregard of Plaintiff's rights under the FCRA.

WHEREFORE, Plaintiff, Elena Borum, demands judgment against Defendant for:

a) back pay and lost benefits;

b) front pay or reinstatement;

c) compensatory damages;

d) punitive damages as permitted by section 760.11(5), Florida Statutes;

e) pre- and post-judgment interest;

f) reasonable attorneys' fees and costs; and

g) such other relief as the Court deems appropriate.

**<u>COUNT III – RETALIATION – TITLE VII</u>**

87. Plaintiff realleges and incorporates paragraphs 1 through 67 above.

88. This is an action against Defendant for retaliation under Title VII, 42 U.S.C. § 2000e-3(a), which prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice or made a charge or participated in a proceeding under Title VII.

89. Plaintiff engaged in statutorily protected activity, including by:

(a) complaining to Mr. Dixon on December 10–11, 2023, and to Defendant's Human Resources department on or about December 12, 2023, and in the investigation that followed, about Mr. Richards's sexual harassment, and requesting that he be transferred;

(b) complaining repeatedly to Mr. Dixon, Mr. Bonelli, and Defendant's management about Mr. Richards's continuing harassment, including in late September 2024, on October 5, 2024, and on January 5, 2025;

(c) complaining to Mr. Dixon, Mr. Bonelli, and Defendant's Human Resources department, including on July 20–21 and July 29, 2024, about derogatory comments concerning her perceived ethnic and religious background; and

(d) filing EEOC Charge No. 511-2024-03303 on August 19, 2024, and supplementing it thereafter.

90. Defendant took materially adverse actions against Plaintiff, including:

(a) demoting Plaintiff from Assistant Manager to Store Lead in or about February 2024;

(b) demoting Plaintiff on May 26, 2024, to a part-time position, without notice, cutting her pay and hours and eliminating her accrued vacation time;

(c) continuing to reduce Plaintiff's hours after she met the sales goals Defendant set;

(d) leaving Plaintiff to work alongside Mr. Richards after she reported him, ignoring her later complaints about him, and excluding her from the investigation of the December 7, 2024 conversation;

(e) questioning Plaintiff and A.M. about what employees were telling Human Resources;

(f) passing over Plaintiff for a full-time position in or about January 2025 and telling her in or about March 2025 that an educational absence was not possible; and

(g) constructively discharging Plaintiff in May 2025.

91. Defendant took these actions because Plaintiff engaged in protected activity.

92. Mr. Dixon and Ms. Lawson, who approved or carried out the demotions, knew of Plaintiff's complaints; Ms. Lawson received the escalation of Plaintiff's December 2023 complaint. Plaintiff's first demotion followed that complaint by approximately two months. Defendant's employees told another employee that management hoped Plaintiff would quit when she returned from her three-week study abroad program.

93. Defendant's explanations are pretextual: it first described the February 2024 demotion as a favor so that Plaintiff could take a trip that management had already approved, and it now claims that Plaintiff asked for both demotions, which her text messages and call records contradict. The hours reductions occurred even though Plaintiff met the sales goals that Defendant said would determine her hours and even though Mr. Dixon acknowledged that sales did not affect hours.

94. Defendant's actions would dissuade a reasonable employee from making or supporting a charge of discrimination.

95. As a result of Defendant's retaliation, Plaintiff has suffered lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

96. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a(b)(1).

WHEREFORE, Plaintiff, Elena Borum, demands judgment against Defendant for:

a) back pay and lost benefits;

b) front pay or reinstatement;

c) compensatory damages;

d) punitive damages;

e) pre- and post-judgment interest;

f) reasonable attorneys' fees and costs under 42 U.S.C. § 2000e-5(k); and

g) such other relief as the Court deems appropriate.

**COUNT IV – RETALIATION – FCRA**

97. Plaintiff realleges and incorporates paragraphs 1 through 67 above.

98. This is an action against Defendant for retaliation under the Florida Civil Rights Act of 1992, including section 760.10(7), Florida Statutes, which prohibits an employer from retaliating against an employee because she has opposed an unlawful employment practice or made a charge or participated in a proceeding under the FCRA.

99. Plaintiff engaged in statutorily protected activity by opposing sexual harassment and discrimination, complaining to Defendant's management and Human Resources department, and filing and supplementing her charge, as described in paragraphs 1 through 65 above.

100. Defendant took materially adverse actions against Plaintiff because of that protected activity, including demoting her in or about February 2024 and on May 26, 2024, reducing her pay and hours and eliminating her accrued vacation time, leaving her to work alongside her harasser, passing her over for a full-time position, and constructively discharging her in May 2025.

101. There is a causal connection between Plaintiff's protected activity and Defendant's adverse actions, and Defendant's stated reasons for them are pretextual, as alleged above.

102. As a result of Defendant's retaliation, Plaintiff has suffered lost wages and benefits, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

103. Defendant's conduct was willful, malicious, or in reckless disregard of Plaintiff's rights under the FCRA.

WHEREFORE, Plaintiff, Elena Borum, demands judgment against Defendant for:

a) back pay and lost benefits;

b) front pay or reinstatement;

c) compensatory damages;

d) punitive damages as permitted by section 760.11(5), Florida Statutes;

e) pre- and post-judgment interest;

f) reasonable attorneys' fees and costs; and

g) such other relief as the Court deems appropriate under.

**<u>COUNT V – NEGLIGENT RETENTION</u>**

104. Plaintiff realleges and incorporates paragraphs 1 through 67 above.

105. This Count is pleaded under Florida common law, independent of Title VII and the FCRA, and in the alternative to Count VI to the extent Mr. Richards's acts are determined to have been outside the course and scope of his employment. Fed. R. Civ. P. 8(d)(2)–(3).

106. Mr. Richards committed common-law torts against Plaintiff, including battery, as alleged in Count VI.

107. Defendant owed Plaintiff, its employee, a duty to exercise reasonable care in retaining and supervising Mr. Richards. Plaintiff was within the zone of risk reasonably foreseeable to Defendant because Defendant assigned Mr. Richards to work alongside her.

108. Defendant had actual notice of Mr. Richards's unfitness for continued employment no later than December 10–12, 2023, when Plaintiff reported that he had struck her buttocks with a hanger and made sexual comments about her and A.M. That notice was reinforced by Defendant's own investigation and Mr. Richards's admission, by the information Defendant already had about his conduct at a prior store, and by Plaintiff's repeated later reports.

109. Despite that notice, Defendant failed to take appropriate further action. It did not adequately investigate or supervise Mr. Richards, transfer him, reassign his shifts, discipline him beyond a single written warning, or discharge him.

110. Defendant retained Mr. Richards at Store 3312 and assigned him to work alongside Plaintiff for more than thirteen months. Defendant had the ability to take these steps: it operates other stores in the area, it had moved Mr. Richards and other male employees between stores before, and it terminated other employees for less.

111. Defendant's failure to act was unreasonable and was a direct and proximate cause of the further harm Mr. Richards inflicted on Plaintiff, including the touching of her stomach on October 3, 2024, the dragging of a pant hanger across her

buttocks in late October 2024, his repeated physical contact with her body, and his continuing sexual comments.

112. Plaintiff suffered physical contact from Mr. Richards and, as a direct and proximate result of Defendant's negligence, has sustained past and future damages including: (a) mental pain; (b) severe emotional distress; (c) embarrassment; (d) humiliation; (e) mental anguish; (f) loss of the capacity for the enjoyment of life; (g) impairment of working ability; (h) loss of dignity; and (i) loss of or diminution of earnings or earning capacity.

WHEREFORE, Plaintiff, Elena Borum, demands judgment against Defendant for:

a) compensatory damages;

b) pre- and post-judgment interest as allowed by law;

c) costs; and

d) such further relief as the Court deems appropriate and just.

**COUNT VI – BATTERY**

113. Plaintiff realleges and incorporates paragraphs 1 through 67 above.

114. Mr. Richards intentionally made harmful or offensive physical contact with Plaintiff, without her consent, on multiple occasions, including: (a) on December 10, 2023, when he bounced the end of a hanger off her buttocks; (b) on October 3, 2024, when he touched her stomach; (c) in late October 2024, when he dragged a pant hanger across her buttocks; and (d) repeatedly in 2024 and January 2025, when he dragged his body against hers as he walked past.

115. The contacts were unsolicited, unwelcome, and offensive to Plaintiff's reasonable sense of personal dignity. Plaintiff did not consent to any of them.

116. Mr. Richards committed the batteries on Defendant's premises, during Plaintiff's and his working hours, while he was on duty. The hanger contacts occurred while Mr. Richards was handling Defendant's merchandise, and the December 10, 2023 contact occurred while Plaintiff was assisting a customer. Defendant is vicariously liable for Mr. Richards's batteries because they were committed within the course and scope of his employment and were incidental to it. Alternatively, Defendant is vicariously liable because Mr. Richards was aided in committing them by the agency relationship and his position in Defendant's store, and because Defendant ratified them by retaining him, with full knowledge of the first battery, while keeping him in contact with Plaintiff.

117. As a direct and proximate result of the batteries, Plaintiff has sustained past and future damages including: (a) mental pain; (b) severe emotional distress; (c) embarrassment; (d) humiliation; (e) mental anguish; (f) loss of the capacity for the enjoyment of life; (g) impairment of working ability; (h) loss of dignity; and (i) loss of or diminution of earnings or earning capacity.

WHEREFORE, Plaintiff, Elena Borum, demands judgment against Defendant for:

a) compensatory damages;

b) pre- and post-judgment interest as allowed by law;

c) costs; and

d) such further relief as the Court deems appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 22, 2026.

Respectfully submitted,

/s/ Gary L. Printy, Jr.

Gary L. Printy, Jr., Esq.
Florida Bar No. 41956
THE PRINTY LAW FIRM
5407 N. Florida Ave.
Tampa, Florida 33604
Telephone: 813-434-0649
Fax: 813-423-6543
garyjr@printylawfirm.com
e-service@printylawfirm.com
*Lead Counsel for Plaintiff*
*Elena Borum*